**NOT FOR PUBLICATION**

```
                   UNITED STATES DISTRICT COURT
                      DISTRICT OF NEW JERSEY
```

|  |  |
|---|---|
| SOUTHERN NEW JERSEY BUILDING<br>LABORERS' DISTRICT COUNCIL,<br><br>    Petitioner,<br><br>    v.<br><br>COLLECTIVE CONCRETE CORP/<br>COLLECTIVE BUILDING SERVICES,<br><br>    Respondent. | CIVIL ACTION NO. 06-4458 (MLC)<br><br>**MEMORANDUM OPINION** |

**COOPER, District Judge**

Petitioner, Southern New Jersey Building Laborers' District Council (the "Union"), filed a petition requesting that this Court, inter alia, (1) confirm the arbitration award issued on July 28, 2006 in Collective Concrete Corp/Collective Building Services v. So. NJ Building Laborers Council, No. 02-0004 (July 28, 2006) (Murray, Arb.) (the "7-28-06 Opinion & Award"), and (2) enter judgment in its favor and against respondent, Collective Concrete Corp/Collective Building Services ("Collective"), in the amount of $10,384.72 plus interest. (Dkt. entry no. 1, Pet. to Confirm Arb. Award, at ¶¶ a & b.) The Union also moves for an order confirming the 7-28-06 Opinion & Award. (Dkt. entry no. 2.) Collective opposes confirmation of the 7-28-06 Opinion & Award and entry of any judgment against it. (See dkt. entry nos. 4-6.) The Court, for the reasons stated herein, will grant the motion.

**BACKGROUND**

Collective is a New Jersey corporation, which performs construction contractor services in various states. (Union Reply Br., at 1; Pet. to Confirm Arb. Award, at ¶ 1.) The Union is a labor union organized under the National Labor Relations Act, which represents workers employed by construction contractors in Southern New Jersey. (Union Reply Br., at 1; Pet. to Confirm Arb. Award, at ¶ 3.) Collective and the Union executed a Short Form Agreement on April 3, 2001 in which they agreed

> to be bound by the terms and conditions as set forth in the Building, Site and General Construction Agreement by and between the Building Laborer Local Unions and District Councils of New Jersey and various Building, Site and General Construction Contractors and Employers, which Agreement is incorporated herein as if set forth in full.

(Pet. to Confirm Arb. Award, Ex. B.)

The collective bargaining agreement (the "CBA") referenced and incorporated into the Short Form Agreement states that it is the exclusive agreement, oral or written, governing the relationship between the parties. (Pet. to Confirm Arb. Award, Ex. A, at ¶ 1.30.) Pursuant to the CBA, Collective agreed to give the Union the first opportunity to furnish it with laborers and apprentices for its projects, and the Union agreed to provide such laborers provided that Collective notifies the Union twenty-four hours before the laborers are needed and states the number needed, their necessary skill level, and the time and

place of the specific project.  (Id. at ¶ 3.20.)  Articles X and XI of the CBA govern the amount and payment of these workers' wages and fringe benefits.  (Id. at Art. X & Art. XI.)  Further, the CBA requires that there be a competent job steward, who is a member of the territorial local union, on every job.  (Id. at ¶ 7.10(a).)  Failure to hire a Union-designated job steward on a project where laborers' work is being performed constitutes a breach of the CBA.  (Id. at ¶ 7.10(d).)

The CBA also contains the following relevant provisions:

> The Employer agrees that all contractors or subcontractors who are engaged by the Employer to perform work of the kind covered by this Agreement at the site of construction, alteration, painting, demolition, asbestos removal, hazardous waste removal, or repair of a building structure, or other construction work shall be or shall become a signatory to this Agreement. . . .  The Employer will be responsible for all losses incurred by the employees or the Union in the event he subcontracts to a subcontractor who fails to execute this Agreement.
>
> [I]t is agreed that when the Employer performs any work of the type covered by this Agreement at any work site (1) under its own name, or (2) under the name of another entity . . . where the Employer, including its owners, stockholders, officers, directors, or partners, exercise either directly or indirectly . . . any significant degree of ownership, management or control, the terms of this Agreement shall be applicable to all such work.
>
> This Agreement shall become effective on the 1st day of May 2002, or the date signed, whichever is later, and shall terminate at midnight, April 30, 2007.

(Id. at ¶¶ 17.10, 17.20, & 23.10.)  The CBA notes that its terms are applicable to all construction work performed within the

recognized jurisdiction of the Union.  (Id. at ¶ 2.20).  It further notes that if a grievance arises regarding its application or any term or condition of work, and the parties cannot settle such dispute, the matter may be submitted to the New Jersey State Board of Mediation for final and binding arbitration.  (Id. at ¶ 21.20(b), (c), (d), & (e).)

The Union alleges that from May through June of 2002, "Collective failed to apply the terms and conditions of employment provided in the [CBA] to the laborers employed at its Burlington County jobsite in Burlington, New Jersey.  In particular, Collective failed to subcontract bargaining unit work to a signatory contractor paying the contractual wages and benefits required by the [CBA]."  (Pet. to Confirm Arb. Award, at ¶ 7.)  Accordingly, the Union submitted its grievance to the New Jersey State Board of Mediation.  (Id. at ¶ 8; Union Reply Br., at 2.)  Arbitrator Michael Murray (the "Arbitrator") conducted a hearing at the Union's offices in Robbinsville, New Jersey on August 28, 2002.  (Union Reply Br., at 2.)  At the conclusion of the hearing the Arbitrator urged the parties to negotiate a settlement.  (Id.)  Nevertheless, no settlement was reached and on June 23, 2004, the Arbitrator issued a written opinion finding that Collective violated Articles III and VII of the CBA (the "6-23-04 Opinion & Award").  (Pet. to Confirm Arb. Award, Ex. C., 6-23-04 Op. & Award, at 4.)  The Arbitrator ordered an audit of

Collective's records because the data provided at the August hearing was incomplete, and thus, he could not determine what monies Collective owed the Union without an audit. (Id. at 5.)

A subsequent hearing was held on July 24, 2006 at the Union's Hamilton, New Jersey offices. (Pet. to Confirm Arb. Award, Ex. D, 7-28-06 Op. & Award, at 1.) Thereafter, the Arbitrator issued the 7-28-06 Opinion & Award stating that "[a]fter reviewing the testimony provided at the on [sic] July 24, 2006 hearing and the audit materials provided (U-2), Collective . . . violated the [CBA] between the parties by improperly subcontracting work to Egis Masonry at the Burlington Site in 2002, thus causing lost work opportunities for members of the [Union]." (Id. at 2.) The Arbitrator concluded that the evidence presented and the parties' arguments permitted "no other decision than to uphold the Union's grievance." (Id. at 3.) Therefore, the Arbitrator awarded the Union $10,384.72 in damages. (Id. at 4.) The Union now moves to confirm the Arbitrator's award. (Dkt. entry no. 2.)

**DISCUSSION**

**I. Legal Standards**

The Federal Arbitration Act, 9 U.S.C. § ("Section") 1, et seq., (the "FAA") states that contract provisions requiring arbitration are valid and enforceable. See 9 U.S.C. § 2. Once an arbitrator reaches a decision in a matter, Section 9 of the

5

FAA permits district courts to confirm the arbitration award as a final judgment. N.J. Bldg. Laborers Statewide Benefit Funds v. Thomas Fireproofing, Inc., No. 06-1034, 2006 U.S. Dist. LEXIS 27589, at *3 (D.N.J. May 5, 2006). Specifically, Section 9 provides:

> [i]f the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award. . . . If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made.

9 U.S.C. § 9.

A district court also may vacate an arbitration award upon application by either party if (1) it was procured by corruption, fraud, or undue means, (2) there was "evident partiality or corruption" with respect to the arbitrator, (3) the arbitrator committed misconduct by refusing to postpone the hearing, refusing to hear pertinent and material evidence or otherwise committing misbehavior that prejudiced the rights of a party, or (4) the arbitrator exceeded his or her powers or failed to reach "a mutual, final, and definite award". 9 U.S.C. § 10(a). However, district courts have very limited authority to vacate an arbitration award. United Transp. Union Local 1589 v. Suburban Transit Corp., 51 F.3d 376, 379 (3d Cir. 1995). A court cannot overrule an arbitrator simply because it disagrees with the

arbitrator's construction of the contract at issue.  Id. Instead, an arbitration award must be enforced as long as the arbitrator arguably construed or applied the contract, and even if the arbitrator has committed a serious error.  Id.  Therefore, "there must be absolutely no support at all in the record justifying the arbitrator's determinations for a court to deny enforcement of an award."  Id. (citation omitted).

An arbitration decision that is based on construction of a collective bargaining agreement cannot be vacated if the decision "draws its essence" from the collective bargaining agreement. Id.; Eichleay Corp. v. Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers, 944 F.2d 1047, 1056 (3d Cir. 1991) (noting that an arbitration award can be vacated only if it does not draw its essence from the collective bargaining agreement at issue).  An arbitration decision "draws its essence" from a collective bargaining agreement if the arbitrator's interpretation "can in any rational way be derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties' intention."  Suburban Transit Corp., 51 F.3d at 380 (citations omitted).  Thus, a district court can only disrupt an arbitrator's decision and award if such arbitrator acted with manifest disregard for the law, or the record before the arbitrator reveals absolutely no support for the determination.  Id.; Eichleay Corp., 944 F.2d at 1056.

**II.   Legal Standards Applied Here**

   **A.   The Parties' Contentions**

Collective argues that the Short Form Agreement "was procured by fraud in the execution and, as a result, same is void ab initio and/or otherwise invalid and unenforceable." (Collective Br., at 2.)  Specifically, Collective argues that the Union falsely represented that the Short Form Agreement pertained only to a Commerce Bank construction project in Fairfield, New Jersey.  (Id.)  Collective contends that it was not given an adequate opportunity at the arbitration hearing held on August 28, 2002 to present evidence demonstrating such fraud in the execution.  (Id. at 3.)

Collective further contends that (1) the Arbitrator refused to postpone the initial hearing despite its request, (2) its employee representative who was present at the arbitration proceedings did not understand the nature of those proceedings, that he was entitled to be represented by legal counsel, or that the Arbitrator's decision would be final and binding, (3) it was not involved in selecting the Arbitrator, and (4) the Union's representatives "seemed to be very well-acquainted with the Arbitrator" creating a reasonable impression of partiality toward the Union.  (Id. at 3-4 & 7-8.)  Collective notes that no transcript of the August 28, 2002 arbitration hearing exists, and thus, it has no way of establishing that the Arbitrator's 7-28-06

8

Opinion & Award is not supported by the record.  (Id. at 6.) Further, Collective asserts that "in the absence of a complete record in these proceedings it seems highly unlikely that the Arbitrator could render an award based upon testimony which he heard almost two (2) years prior to the date of his Opinion and Award, in this matter."  (Id. at 7.)

 The Union, in contrast, argues that Collective cannot claim that it was fraudulently induced to enter into the CBA when it did not raise such a claim with the Arbitrator, especially because Collective does not challenge the validity of the CBA's arbitration clause.  (Union Reply Br., at 6-7.)  Moreover, although Collective contends that it did not have an opportunity to challenge the applicability of either the Short Form Agreement or the CBA to the Burlington jobsite at the initial arbitration hearing on August 28, 2002, the Union notes that Collective neither raised this issue at the subsequent arbitration hearing on July 24, 2006 nor moved to vacate the 6-23-04 Opinion & Award. (Id. at 7.)

 The Union asserts that the Short Form Agreement, which Collective executed, "clearly and unambiguously placed [it] on notice that, by signing, the Company was bound to the Statewide Agreement."  (Id. at 7-8.)  The Union also asserts that Collective's allegation that the Union's agents were familiar with the Arbitrator does not sufficiently demonstrate "evident

9

partiality" as required by the FAA, and thus, the Court should not vacate the 7-28-06 Opinion & Award on this basis. (Id. at 9.) Instead, the Union argues that the 7-28-06 Opinion & Award should be confirmed because it draws its essence from the CBA. (Id. at 11.)

### B. The Arbitrator's Award was Supported by the Record

The Arbitrator stated that he reviewed the testimony proffered at the August 28, 2002 hearing prior to concluding that Collective violated Articles III and VII of the CBA. (Pet. to Confirm Arb. Award, Ex. C, 6-23-04 Op. & Award, at 4.) The Arbitrator also reviewed the CBA and cited certain relevant portions in his 6-23-04 Opinion & Award. (Id. at 3-4.) Similarly, the Arbitrator reviewed the audit materials submitted at the subsequent hearing on July 24, 2006 and the testimony proffered at that hearing before concluding that Collective violated the CBA by subcontracting work to Egis Masonry in connection with its Burlington County construction project. (Pet. to Confirm Arb. Award, Ex. D, 7-28-06 Op. & Award, at 2.) Thus, this Court finds that the Arbitrator's 6-24-04 Opinion & Award and 7-28-06 Opinion & Award are supported by the record.

This Court, as discussed supra, must enforce an arbitration award as long as the arbitrator arguably construed or applied the contract, and even if the arbitrator has committed a serious error. Suburban Transit Corp., 51 F.3d at 379. Here, neither the

Short Form Agreement nor the CBA states that its applicability is limited to the Commerce Bank project in Fairfield, New Jersey. Instead, the CBA, which is expressly incorporated into the Short Form Agreement by reference, states that it remains in effect through April 30, 2007.  (Pet. to Confirm Arb. Award, Ex. A, at ¶ 23.10.)  By executing the Short Form Agreement, Collective agreed to the terms of the CBA, which provides, inter alia, that (1) it must give the Union the first opportunity to furnish laborers and apprentices for its construction projects, (2) grievances arising from the CBA must be submitted to an arbitrator, (3) all of its contractors and subcontractors engaged to perform work covered by the CBA must become signatories to the CBA, and (4) there must be a competent job steward, who is a member of the territorial local union, on every job.  (Id. at ¶¶ 3.20, 7.10(a), 17.10, & 21.20.) Accordingly, the Arbitrator's conclusion that Collective breached the CBA can be rationally derived from the language of that agreement, as well as its context.  See Suburban Transit Corp., 51 F.3d at 380.  Therefore, this Court finds that the Arbitrator's 7-28-06 Opinion & Award "drew its essence" from the CBA and is supported by the record.  See id.; Eichleay Corp, 944 F.2d at 1056.

    **C.**    **Collective Has Not Demonstrated a Sufficient Basis for Vacating the Arbitrator's Award**

None of the grounds for vacating an arbitration award set forth in Section 10 of the FAA are applicable here.  Collective does not allege that any fraud or corruption occurred in

11

connection with the arbitration proceedings or that the Arbitrator exceeded his powers or failed to reach a final determination.  See 9 U.S.C. § 10(a).  Moreover, Collective has not sufficiently demonstrated that the Union fraudulently induced it to execute the Short Form Agreement, and in fact, did not make any such allegations at either arbitration hearing.  (See Union Reply Br., at 7.)  However, Collective does allege that there was "evident partiality" with respect to the Arbitrator, and that the Arbitrator committed misconduct by refusing to postpone the August 28, 2002 hearing.  See 9 U.S.C. § 10.

Arbitration proceedings must be conducted in an impartial atmosphere, and thus, all parties to the arbitration must disclose any circumstances that might create an appearance of bias with respect to the arbitrator.  Brewery Workers Joint Local Exec. Bd. of N.J. v. P. Ballantine & Sons, No. 561-72, 1973 U.S. Dist. LEXIS 13967, at *2 (D.N.J. April 19, 1973).  A party asking a court to vacate an arbitration award for "evident partiality" must show that "a reasonable person would have to conclude that the arbitrator was partial to the other party to the arbitration."  Kaplan v. First Options of Chi., Inc., 19 F.3d 1503, 1523 (3d Cir. 1994) (internal quotations omitted).  Thus, "evident partiality" requires proof of circumstances "powerfully suggestive of bias."  Id. (citations omitted); see P. Ballantine & Sons, 1973 U.S. Dist. LEXIS 13967, at *40 (stating that "an

arbitration award should not be vacated unless there is a <u>direct</u>, rather than merely a tangential, undisclosed personal or business relationship on the part of the arbitrator with one of the immediate parties to the arbitration" (emphasis in original)). Thus, because Collective's allegation that the Union's representatives and the Arbitrator "seemed to be very well-acquainted" is not powerfully suggestive of bias, the Court finds that it has not demonstrated "evident partiality" with respect to the Arbitrator here.  Similarly, we find that the Arbitrator's alleged refusal to postpone the initial arbitration hearing did not sufficiently prejudice Collective to warrant vacating the 7-28-06 Opinion & Award, particularly when a subsequent hearing was conducted on July 24, 2006, at which Collective could have raised any additional arguments it had.

## CONCLUSION

The Court, for the reasons stated <u>supra</u>, will (1) grant the Union's motion, (2) confirm the 7-28-06 Opinion & Award, and (3) enter judgment against Collective and in favor of the Union in the amount of $10,384.72.  The Court will issue an appropriate order and judgment.

                                            s/ Mary L. Cooper
                                            **MARY L. COOPER**
                                            United States District Judge